UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
www.flnb.uscourts.gov

IN RE:                                                    Case No. 17-40185

CAMPBELLTON-GRACEVILLE HOSPITAL
CORPORATION,[1]                                           Chapter 11

      Debtor.

_____/

**DEBTOR'S EMERGENCY MOTION FOR (A) AUTHORITY TO (I) MAINTAIN BANK ACCOUNTS AND TO CONTINUE TO USE EXISTING BUSINESS FORMS AND CHECKS, AND (II) CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM, AND (B) WAIVER OF CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

**(Emergency Hearing Requested)**

**Basis for Requested Emergency Hearing**

The Debtor respectfully requests that the Court conduct a hearing on this Motion within three business days of the Petition Date (as defined herein), consistent with Administrative Order 05-001.  The Debtor maintains a number of bank accounts.  The United States Trustee Guidelines require the closing of all pre-petition bank accounts and the establishment of new DIP accounts. Changing the Debtor's existing bank accounts and business forms would severely disrupt the Debtor's cash management system and adversely affect the Debtor's business operations and the services provided to the community. Section 345 of the Bankruptcy Code also imposes investment guidelines on debtors.  The Debtor is also requesting a waiver of the requirements of Section 345.

Campbellton-Graceville Hospital Corporation ("CGHC" or the "Debtor"), by and through its proposed undersigned counsel, pursuant to 11 U.S.C. §§ 105(a), 345(b), 363(c) and Administrative Order 05-001, seeks entry of an order: (a) authorizing (i) the continued use of the Debtor's existing Bank Accounts (as defined herein) and continued use of existing Business Forms (as defined herein) and checks, and (ii) the continued use of the existing cash management

---

[1]    The last four digits of the taxpayer identification number for the Debtor are 9709.  The mailing address for the Debtor is 5429 College Drive, Graceville, FL 32440.

system; (b) waiving investment and deposit guidelines of Section 345 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and those guidelines promulgated by the Office of the United States Trustee (the "Guidelines");[2] and (c) providing any additional relief required in order to effectuate the foregoing.  In support of this Motion, the Debtor respectfully states as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 345(b) and 363(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Administrative Order 05-001.

## Background

4.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, title 11 of the Bankruptcy Code.

5.      The Debtor is operating its business and managing its affairs as a debtor in possession.  11 U.S.C. §§ 1107(a) and 1108.

6.      CGHC is a non-profit corporation established pursuant to the laws of the State of Florida in 1961 and operates as a not-for-profit 25-bed critical access hospital serving northern Florida, as well as surrounding areas in Georgia and Alabama, and has approximately 100

---

[2]   The Guidelines were issued in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases.  Such Guidelines require chapter 11 debtors to, among other things:

   a.      close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

   b.      establish and maintain separate debtor-in-possession accounts for the payment of payroll, taxes and operating expenses; and

employees.    CGHC offers comprehensive medical care ranging from emergency services, general hospitalization, laboratory services, swing bed, and physical therapy.    The Debtor is overseen by a Board of Directors who do not receive compensation for their services.

## Prior Financial Distress

7.      In early 2015, CGCH was experiencing financial distress and lacked adequate funds to meet certain of its financial obligations.  In fact, CGHC announced at that time that would permanently close its doors effective April 20, 2015.

8.      In that critical time, CGHC was approached by The People's Choice Hospital ("PCH" as defined above) with a solution.  PCH proposed that it would take over management of the hospital and fund operating losses.  In an effort to save the hospital, CGHC entered into a "Consulting Agreement" with PCH, in which PCH would provide healthcare management and related services for CGHC and provide supervision of the CEO, CFO and Chief Nursing Officer ("CANO").   In exchange for these services, PCH would receive a monthly consulting fee of $30,000 and reimbursement for its expenses.

## The Improper Reference Lab Program

9.      PCH assumed control of the hospital on May 11, 2015, and in October 2015, PCH implemented what became known as the "Reference Lab Program".   The Reference Lab purported to be a way for the hospital to generate additional revenue though blood and urine sample analysis from the Debtor's diagnostic lab. PCH appointed Jorge Perez ("Perez") to oversee the Reference Lab Program.   Allegedly, PCH had worked with Perez in other unrelated projects in the past.

---

          c.      obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to the chapter 11 case.

10.     PCH implemented its own integrated software for patient records and billing and all functions of the hospital.   These systems were put in place by PCH utilizing companies called EMPOWER Systems and EMPOWER HIS.   CGHC believes that PCH and or its agents own or otherwise control these companies.   PCH also implemented remote access telemedicine technology connecting healthcare providers to patients across long distances and leveraged CGHC's lab service testing capabilities.   PCH aggressively drove independent lab testing services through CGHC's existing reimbursement contracts throughout the life of the Reference Lab Program.   As the Reference Lab Program progressed, PCH systematically kept information from CGHC and its Board and utilized the Reference Lab Program for improper purposes.   It was not until May 2016, that CGHC began to learn of these improprieties.   PCH terminated Perez in June 2016.

11.     CGHC filed suit against PCH to remove them from their position and on June 22, 2016, CGHC obtained an injunction against PCH that, *inter alia,* compelled PCH to produce certain financial records and removed PCH from any authority with CGHC.   CGHC and PCH have been embroiled in litigation since that time.

12.     CGHC has been unable to obtain a full financial picture of what transpired while PCH and Perez controlled the hospital and ran the Reference Lab Program, but the information revealed thus far demonstrates that a substantial fraud occurred.   In fact the numbers that have been revealed are staggering - possibly hundreds of millions of dollars improperly billed and routed through CGHC – particularly for this small rural hospital.   Additionally, CGHC has been sued by multiple independent labs that claim they did business with CGHC for the Reference Lab Program, but that they have not been paid for their services.   These lawsuits aggregate in excess of $6 Million.    In fact, the hospital gets frequent calls from patients who claim they have

received a bill for lab services, but that they never had such lab services performed.  Again, the improprieties related to the Reference Lab Program appear to be extraordinary.

13.     On August 22, 2016, the U.S. Office of Personnel Management, Office of the Inspector General ("OIG"), began investigating CGHC with respect to alleged fraudulent and illegal billing practices related to laboratory arrangements.    In August 2016, a special investigator from Blue Cross Blue Shield began investigating claims submitted by CGHC, under PCH's management, for laboratory service, which federal investigation remains on-going as of the Petition Date.Relief Requested

14.     By this Motion, the Debtor seeks (a) authority for (i) the continued use of the Debtor's existing Bank Accounts (as defined herein) and continued use of existing Business Forms (as defined herein) and checks, (ii) the continued use of the existing cash management systems; and (b) a limited waiver of the investment and deposit guidelines of Section 345 of the Bankruptcy Code and the United States Trustee's Guidelines.

15.     The relief requested herein will help ensure the Debtor's smooth transition into Chapter 11 and avoid the possible disruptions and distractions that could otherwise divert the Debtor's attention from more pressing matters during the initial days of this Chapter 11 case.

**The Debtor's Existing Bank Accounts and Cash Management System**

16.     In the ordinary course of its business, the Debtor utilized accounts at First Federal Bank, People's Bank of Graceville, and Regions Bank, to efficiently collect, transfer and disburse funds generated on a daily basis from its operations.  The Debtor respectfully requests authority to maintain its existing bank accounts (each a "Bank Account" and collectively, the "Bank Accounts") and cash management system ("Cash Management System") in accordance with its usual and customary practices, subject to certain modifications as set forth herein, to

ensure a smooth transition into chapter 11 with minimal disruption to operations.   Attached to this Motion as **Exhibit "A"** is a schedule listing: (a) the names of the prepetition bank accounts which the Debtor seeks to maintain post-petition; (b) the amount on deposit in each of the accounts as of the date preceding the Petition Date; and (c) whether the depository is an authorized depository pursuant to 11 U.S.C. § 345(b).

17.     The Debtor utilizes seven (7) bank accounts maintained at First Federal Bank, People's Bank of Graceville and Regions Bank, as follows:

      a.   Lockbox Account (xxx 8585) at Regions Bank.

      b.   Operating Account (xxx6125) at First Federal Bank;

      c.   Payroll Account (xxx1742) at First Federal Bank;

      d.   Public Operating Account (xxx0377) at People's Bank of Graceville;

      e.   Public Fund Account (xxx0608) at People's Bank of Graceville;

      f.   Tax Account (xxx1147) at People's Bank of Graceville; and

      g.   Payroll Account (xxx0894) at People's Bank of Graceville;

18.     Prior to the commencement of this case, on average, the Debtor cleared only one wire transfer to Amerisource per month, as well as various bank drafts.     The Debtor also conducts banking transactions by debit or ACH payments, and other similar methods.

19.     In the ordinary course of the Debtor's business, the Debtor receives insurance remittances through its lockbox account (8585) at Regions Bank.    The funds received in the Regions lockbox account are then deposited into the Debtor's operating account at First Federal Bank (xxx6125).    In addition to the insurance remittances, the Debtor's operating account at First Federal (6125) is also funded by patient payments.    The funds are then transferred from the operating account at First Federal Bank (6125) to the Debtor's payroll account at First Federal

(1742) to pay the Debtor's accounts payable and operational expenses.   The Debtor will work with First Federal to ensure that no pre-petition outstanding checks are cleared from the operating account (6125) post-petition.

20.   On a bi-weekly basis, funds are transferred from the Debtor's operating account at First Federal (6125) to First Federal Bank, whereby First Federal Bank deposits the funds into employee accounts.   The Debtor's payroll is processed on a bi-weekly basis.

21.   The Debtor's operating account at Peoples (0377) is used to receive EFT insurance remittances, and the Debtor's public fund account at Peoples (0608) is used to receive monies collected from donations.   The Debtor's tax account at Peoples (1147) is used to receive monies from the Tax Collector's Office, and the Debtor's payroll account at Peoples (0894) has had no activity since December 12, 2016.

22.   The Debtor's cash management systems are managed by the Debtor's financial personnel located in Graceville, Florida.   Through the utilization of the existing cash management systems and a comprehensive accounting system, the Debtor is able to facilitate cash forecasting and reporting, monitor collection and manage disbursement of funds, and maintain control of the administration of the various bank accounts required to effect the collection, disbursement and movement of cash.   The movement of funds through the Debtor's cash management system is illustrated in the chart attached hereto as **Exhibit "B."**

23.   The cash management systems used by the Debtor constitutes ordinary, usual, and essential business practices.   This system allows the Debtor to (a) control corporate funds centrally, (b) ensure availability of funds when necessary, and (c) reduce administrative expenses.

24.    The Debtor's operations require that the cash management systems continue during the pendency of the chapter 11 case.  If the Debtor was required to adopt a new cash management system, its operations would be severely disrupted, which would have an adverse impact on the Debtor's ability to reorganize.  Further, the establishment of new cash accounts and a new collection and disbursement system would result in substantial additional costs to the Debtor's bankruptcy estate.  Accordingly, maintenance of the existing cash management system is essential and in the best interests of all creditors and other parties in interest.

**Maintenance of the Debtors' Existing Bank Accounts,**
**Cash Management Systems, Checks, and Business Forms is Warranted**

A.    Waiver of Guidelines.

25.    By this Motion, the Debtor seeks a waiver of certain operating Guidelines established by the Office of the United States Trustee.  For example, the Office of the United States Trustee has established certain operating Guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases.  These Guidelines require Chapter 11 debtors to, among other things, (i) close all existing bank accounts, (ii) open new debtor in possession ("DIP") bank accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, (iii) establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), (iv) maintain a separate DIP account for cash collateral, and (v) obtain checks for all DIP accounts that bear the designation, "debtor in possession," the bankruptcy case number, and the type of account.  The Guidelines also require debtors to close their books and records as of the petition date and to open new books and records.  These requirements are designed to provide a clear line of demarcation between prepetition and post-petition transactions and operations and to prevent the inadvertent post-petition payment of prepetition claims. Through this Motion, the Debtor seeks relief from these requirements.

B.    Books & Records.

26.    The Debtor seeks a waiver of the requirement that it open a new set of books and records as of the Petition Date.  The Debtor respectfully submits that opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay.  With the use of computer technology, it is now easy to differentiate between pre- and post-petition transactions by date.  The Debtor, in the ordinary course of its business, uses many checks, invoices, stationery, and other business forms.  By virtue of the nature and scope of the business in which the Debtor is engaged and the numerous other parties with whom the Debtor deals, the Debtor needs to use its existing business forms without alteration or change.  A substantial amount of time and expense would be required in order to print new checks and other business forms.  Fulfillment of the requirement would likely delay payment of post-petition claims and negatively affect operations.  Accordingly, the Debtor respectfully requests that it be authorized to continue to use its existing business forms and to maintain its existing business records.

C.    Request for Waiver of Section 345 Deposit Guidelines.

27.    By this Motion, the Debtor seeks a waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code to permit the Debtor to maintain its existing Bank Accounts and cash management system.  Section 345(b) of the Bankruptcy Code sets forth specific requirements for deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States … or backed by the full faith and credit of the United States…"  11 U.S.C. § 345(b).  For such deposits or investments, Section 345(b) requires, from the entity with which the money is deposited or invested, a bond in favor of the United States secured by the undertaking of a surety, or, in the

alternative, a deposit of securities of the kind specified in section 9303 of title 31. These requirements may be waived by the Court "for cause."

28.     Because of the nature of the Debtor's case, the Debtor seeks a waiver of the requirements of the Office of the United States Trustee and Section 345 of the Bankruptcy Code. The benefits of imposing the requirements of the Office of the United States Trustee in this case are outweighed by the cost and disruption of opening new accounts, obtaining new check stock, manually preparing checks until the new check stock arrives, and the like.

29.     Likewise, "cause" exists to waive the requirements of Section 345. The Debtor believes that the banks at which it maintains its accounts are financially stable banking institutions, and are FDIC insured. Additionally, as explained above, the Debtor's Bank Accounts comprise an established cash management system that the Debtor needs to maintain in order to ensure that collections and disbursements from the Bank Accounts are not disrupted. The Debtor will note, in its records, the date and time the chapter 11 petition was filed, and the records will reflect each post-petition receipt and disbursement. Therefore, a waiver of the section 345 deposit guidelines would not pose a risk to the Debtor's estate or its creditors. Accordingly, the Debtor requests that its existing account be deemed a debtor-in-possession account, and that its maintenance and continued use be authorized.

D.     Request for Authorization to Maintain Existing Business Forms.

30.     The Debtor also seeks authority to continue to use its prepetition business forms, including, but not limited to, correspondence, checks, letterhead, purchase orders, invoices, etc. (collectively, the "Business Forms"), without reference to its status as a debtor in possession. Changing correspondence and business forms would be unnecessary and burdensome, expensive and disruptive. Given the nature and scope of the Debtor's operations, and the numerous

employees, patients, suppliers of goods and services, and others with whom the Debtor transacts business, it is imperative that the Debtor be permitted to continue to use its existing Business Forms without change.

31.    Authorization to use the Business Forms will facilitate a smooth and orderly Chapter 11 case, minimize the disruption of the Debtor's business affairs (without violating the requirements of, or the policies underlying, the Bankruptcy Code), and enable the Debtor to more effectively and expeditiously restructure.  Vendors doing business with the Debtor will likely be aware of the Debtor's status as a debtor-in-possession as a result of receipt of notice of the commencement of this case.  The Debtor accordingly requests that it be authorized to use its existing Business Forms without being required to label each with the "debtor in possession" identifier.

## Authority for Relief

32.    The Debtor should be authorized to continue to use its existing Bank Accounts and cash management system.  The Debtor will work closely with each depository institution at which a Bank Account is held to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court.  The Debtor will also maintain records of all transfers within the cash management system so that all transfers and transactions will be documented in its books and records to the same extent such information was maintained by the Debtor prior to the Petition Date.

33.    Permitting the Debtor to use its existing Bank Accounts and cash management system is in the best interests of the Debtor's estate and its creditors and other interested parties. To require the Debtor to use new accounts would be disruptive to its business and would impair

its efforts to maximize the value of the Debtor's estate and restructure its business. Moreover, having to open new accounts as of the Petition Date would unnecessarily distract the Debtor's key accounting and financial personnel, whose efforts are more appropriately focused on assisting with operating the Debtor's business. Furthermore, any delays or disruption in the payment of wages and other employee-related expenses resulting from changing Bank Accounts would erode employee morale at this critical time, and would cause the Debtor's employees to suffer hardship. This, in turn, could result in their departure, an outcome which would severely hamper the Debtor's reorganization efforts.

34.    Conversely, maintenance of the Debtor's prepetition Bank Accounts and cash management system would avoid delays in the payment of necessary expenses, such as payroll, and will ensure a smooth transition into chapter 11 without the inconvenience, cost, confusion and delay associated with transferring cash management operations to new accounts. By allowing the continued use of its existing Bank Accounts and cash management system, the Debtor will have the unimpeded cash flow necessary for the maintenance of its operations. Accordingly, the Debtor respectfully requests authorization to maintain its Bank Accounts and cash management system in the ordinary course of its business, provided that no prepetition checks, drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will not be honored unless authorized by separate order of this Court.

35.    The Debtor also requests authority to preserve various reporting and accounting mechanisms, such as signatory authorizations and accounting systems central to the maintenance of the Bank Accounts. The interruption or termination of such reporting and accounting mechanisms would undermine the utility of the Bank Accounts. In accordance with existing

practices, the Debtor will maintain strict records of all receipts and disbursements from the Bank Accounts during the pendency of this case and will ensure that its records properly distinguish between pre- and postpetition transactions.

36.     The Debtor's continued ordinary course use of its cash management system is consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor in possession to "use property of the estate in the ordinary course of business." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985).   Courts have long recognized that strict enforcement of bank account closing requirements does not serve the purposes of chapter 11.   *See In re Columbia Gas Systems, Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part* & *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied*, 114 S. Ct. 1050 (1994) (noting that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash");*see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

37.     The Debtor's continued ordinary course use of its cash management system granting a limited waiver of the deposit Guidelines set forth in section 345 of the Bankruptcy Code and the U.S. Trustee's guidelines is also consistent with section 105 of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

38.     The Debtor should also be granted authority to maintain its existing Bank Accounts.  As set forth above, the U.S. Trustee has established certain operating Guidelines for debtors in possession to supervise the administration of chapter 11 cases.  The Debtor seeks a

waiver of the U.S. Trustee's guideline that the accounts be closed and that new postpetition bank accounts be opened.   Subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtor requests that the accounts be deemed to be debtor in possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.   The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and each of its banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

39.     The Debtor should be granted further relief from the Guidelines to the extent that they require the Debtor to make all disbursements by check.  In particular, the Guidelines require that all receipts and all disbursements of estate funds be by check with a notation representing the reason for the disbursement.   Considering the complexity of the Debtor's operations, the Debtor must conduct transactions by debit, wire, or ACH payments and other similar methods, as discussed above.  In addition, the Debtor receives a portion of its patient receipts from credit card purchases through ACH payments from the credit card companies.   To deny the Debtor the opportunity to conduct transactions by debit, wire or ACH payments or other similar methods would interfere with the Debtor's performance of its contracts and unnecessarily disrupt the Debtor's business operations, as well as create additional costs to the Debtor.

40.     Without the relief requested in this Motion, the Debtor's business operations will suffer adverse consequences, due to the nature and complexity of those operations.   Any significant disruption of the Debtor's operations which adversely affects continued and uninterrupted quality services to the public will likely make it difficult, and perhaps impossible,

to advance a successful reorganization.   Accordingly, the Debtor requests that the Court enter an order granting the relief requested in this Motion.

41.    Extensive authority supports the relief the Debtor seeks in the Motion.  In other Chapter 11 cases, courts have recognized that strict enforcement of requirements of the United States Trustee Guidelines and section 345(b) of the Bankruptcy often do not serve the purposes of a large, complex, Chapter 11 case.  Accordingly, courts in Florida have often granted relief from these requirements and replaced them with alternative procedures.  *See, e.g., In re RMS Titanic, Inc., et al.*, Case No. 3:16-bk-02230-PMG (Bankr. M.D. Fla. June 27, 2016); *In re Adinath Corp., et al.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. May 11, 2015); *In re Antaramian Properties, LLC, et al.,* Case No. 9:14-bk-10145-CED (Bankr. M.D. Fla. Oct. 15, 2014); *In re Florida Gaming Centers, Inc.*, Case No. 13-29597-RAM (Bankr. S.D. Fla. Oct. 7, 2013); *In re TLO, LLC*, Case No. 13-28053-PGH (Bankr. S.D. Fla. June 13, 2013).

**WHEREFORE**, the Debtor respectfully requests the Court to enter an order in the form attached hereto as **Exhibit "C"** (i) granting the Motion; (ii) authorizing the Debtor's continued use of the existing cash management systems of the Debtor; (iii) authorizing the Debtor's continued maintenance and use of the existing bank accounts listed in attached **Exhibit "A"**; (iv) waiving the requirement that the Debtor's existing bank accounts be closed, and that new debtor-in-possession bank accounts be opened; (v) authorizing the continued use of the Debtor's

business forms and checks; and (vi) granting such other and further relief as is just and proper.

Dated: May 5, 2017                    Respectfully submitted,

                                      BERGER SINGERMAN LLP
                                      *Proposed Counsel for Debtor and Debtor-in-Possession*
                                      313 North Monroe Street, Suite 301
                                      Tallahassee, FL 32301
                                      Tel. (850) 561-3010
                                      Fax (850) 561-3013

                                      By: */s/   Brian G. Rich*_____
                                          Brian G. Rich
                                          Florida Bar No. 38229
                                          brich@bergersingerman.com


### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the

5th day of May, 2017, by first class, U.S. Mail upon all parties on the attached Service List.


                                      */s/   Brian G. Rich*_____
                                          Brian G. Rich

**Campbellton-Graceville Hospital Corporation**
**SERVICE LIST**
**(Secured Creditors,  Taxing Authorities, 20 Largest**
**Unsecured Creditors, Appearances)**

GE HF S, LLC
20225 Watertower Boulevard
Brookfield, WI 53045

GE HF S, LLC
P.O. Box 414
W-490
Milwaukee, WI 53201

Lenovo Financial Services
10201 Centurion Parkway N.
Suite 100
Jacksonville, FL 32256

ServisFirst Bank
4801 W. Main Street
P.O. Box 6456
Dothan, AL 36302

Watson & Downs Investments LLC
P.O. Box 1207
Dothan, AL 36302

Lenovo Financial Services
21146 Network Place
Chicago, IL 60673-1211

Internal Revenue Service
60 West 14th Street
Panama City, FL 32401

Florida Department of Revenue/Reemployment
5050 W. Tennessee Street
Tallahassee, FL 32399

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7345

The Honorable Loretta E. Lynch
Attorney General of the U.S.
950 Pennsylvania Avenue, NW, Room 4400
Washington, DC 20530-0001

Hon. Christopher P. Canova
U.S. Attorney, Northern District of Florida
111 North Adams Street
4th Floor, U.S. Courthouse
Tallahassee, FL 32301

Sun Ancillary Management
45 N.E. Loop 410
Ste. 215
San Antonio, TX 78216

CGH Holdings Company, Inc.
8835 SW 107th Avenue
Suite 535
Miami, FL

Mission Toxicology, LLC
2145 NW Military Hwy.
Ste 102
San Antonio, TX 78213

B3 Diagnostic Laboratory LLC
P.O. Box 9197
College Station, TX 77842

RAJ Enterprises of Central FL
d/b/a Pinnacle Laboratory Services, LLC
1410 NE 8th Avenue
Ocala, FL 34470

Advanced Clinical Laboratory Solutions
2277-83 Coney Island
Suite 3B
Brooklyn, NY 11223

CMS - Centers For Medicare and Medicaid
P.O. Box 469063
Denver, CO 80246

Auspicious Laboratory, Inc.
7400 Harwin Drive
Houston, TX 77036

Physician Stat Lab, Inc.
c/o Ginger Barry Boyd, Esq.
Broad and Cassel LLP
4100 Legendary Drive, Suite 280
Destin, FL 32541-8608

Gilpin Givhan, PC
P.O. Drawer 4540
Montgomery, AL 36103-4540

State of Florida, Agency for Health Care
Administration
Central Intake Unit
2727 Mahan Drive, Mail Stop 61
Tallahassee, FL 32308

Healthnet (CA)
P.O. Box 9103
Van Nuys, CA 91409

Highmark, Inc.
120 Fifth Avenue
Pittsburgh, PA 15222

Diagnostic Lab Direct, LLC
912 Holcomb Bridge Rd.
Ste 303
Roswell, GA 30076

Empower H.I.S.
8724 SW 72 Street, #459
Miami, FL

Southwest Laboratories LLC
4225 Office Parkway
Dallas, TX

Our Family Genes
324 6th Ave North
Jacksonville Beach, FL 32250

CIGNA
P.O. Box 188022
Chattanooga, TN 37422-8022

Park Avenue Capital LLC d/b/a MaxMD
2200 Fletcher Ave.
Suite 506
Fort Lee, NJ 07024-5063

Smiths Inc. of Dothan
P.O. Box 1207
Dothan, AL 36302

**EXHIBIT "A"**
**(List of Bank Accounts)**

| Name and Address of Bank | Type of Account | Amount in Account as of the Petition Date | Authorized Depository |
|---|---|---|---|
| First Federal Bank<br>962 8th Avenue<br>Graceville, FL 32440 | Operating Account<br>(xxx6125) | $707,241.71 | No |
| First Federal Bank<br>962 8th Avenue<br>Graceville, FL 32440 | Payroll Account<br>(xxx1742) | $0.00 | No |
| People's Bank of Graceville<br>5306 Brown Street<br>Graceville, FL 32440 | Public Operating Account<br>(xxx0377) | $579,191.99 | No |
| People's Bank of Graceville<br>5306 Brown Street<br>Graceville, FL 32440 | Public Fund<br>(xxx0608) | $11,061.24 | No |
| People's Bank of Graceville<br>5306 Brown Street<br>Graceville, FL 32440 | Payroll Account<br>(xxx0894) | $258.48 | No |
| People's Bank of Graceville<br>5306 Brown Street<br>Graceville, FL 32440 | Tax Account<br>(xxx1147) | $312,898.02 | No |
| Regions Bank<br>11 N. Water Street<br>Mobile, AL 36602 | Lockbox Account<br>(8585) | $1,918.49 | Yes |

**EXHIBIT "B"**

**(Cash Flow Chart)**

## Campbellton-Graceville Hospital Cash Management System



**Regions Lockbox**

Insurance Remittances → 8585 → Transfers to First Federal Bank

**First Federal Operating**

Patient & Insurance Remittances → (6125) → Disbursements for:
- Payroll
- Accounts Payable

**First Federal Payroll Account**
(1742)



| Peoples Operating Account | Peoples Public Fund | Peoples Tax Account | Peoples Payroll Account |
|---|---|---|---|
| (0377) | (0608) | (1147) | (0894) |
| Receives EFT Insurance Remittances | Receives money collected from donations | Receives money from the Tax Collectors Office | No activity |

7833866-2

**<u>EXHIBIT "C"</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
www.flnb.uscourts.gov


IN RE:                                                    Case No.

CAMPBELLTON-GRACEVILLE HOSPITAL
CORPORATION,[1]                                           Chapter 11

     Debtor.
_____/


**ORDER (A) AUTHORIZING THE DEBTOR (I) TO MAINTAIN
BANK ACCOUNTS AND TO CONTINUE TO USE EXISTING
BUSINESS FORMS AND CHECKS, (II) TO CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEM; AND (B)
WAIVING CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

**THIS MATTER** came before the Court on the _____ day of May, 2017 at

_____ a.m./p.m., in Tallahassee, Florida, upon the motion (the "Motion") [ECF No.

___] filed by the above-captioned debtor and debtor-in-possession (the "Debtor") for authority to

maintain its existing Bank Accounts[2] and to continue to use its existing Business Forms, checks

and cash management system pursuant to section 105(a), 363(c) and 345(b) of the Bankruptcy

Code; and for a waiver of certain investment and deposit guidelines; the Court having reviewed

the Motion, and having heard the statements of counsel in support of the relief requested in the

Motion at the hearing before the Court (the "Hearing"); the Court finding that: (a) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2); (d) notice of the Motion and the Hearing was sufficient under the

---

[1] The last four digits of the taxpayer identification number for the Debtor are 9709. The mailing address
for the Debtor is 5429 College Drive, Graceville, FL 32440.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

circumstances; and (e) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein,

**IT IS ORDERED THAT**:

1.        The Motion is **GRANTED**, *nunc pro tunc* to the Petition Date.

2.        The Debtor is authorized to maintain and use its existing cash management system, as more fully set forth in the Motion.  In connection with the ongoing utilization of the cash management system, the Debtor shall continue to maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.

3.        The Debtor is authorized to maintain and use its existing bank accounts which are identified on the schedule attached as **Exhibit "A"** to the Motion (the "Bank Accounts") in the names and with the account numbers existing immediately prior to the Petition Date.

4.        For purposes of this Order, the requirements in the United States Trustee Guidelines (the "Guidelines") that the Debtor (i) close all existing bank accounts and open new debtor in possession ("DIP") bank accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, (ii) establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), (iii) maintain a separate DIP account for cash collateral, (iv) obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account, and (v) close its books and records as of the petition date and to open new books and records are excused.  The Debtor shall continue to work with the Office of the United States Trustee for the Northern District of Florida to address the issues set forth herein, and otherwise comply with the Guidelines.

5.     The Debtor shall retain the authority to close certain of its Bank Accounts and open new debtor-in-possession accounts, or otherwise make changes to its cash management system as it deems necessary to facilitate its chapter 11 case and operations, or as may be necessary to comply with the requirements of any debtor-in-possession financing facility or cash collateral usage approved by this Court.   In the event that the Debtor opens or closes any additional bank accounts, such opening or closing shall be timely indicated on the Debtor's monthly operating reports and/or notice of such opening or closing shall otherwise be timely provided to the Office of the United States Trustee for the Northern District of Florida.

6.     The Debtor is authorized to deposit funds in and withdraw funds from its Bank Accounts by all usual means including, but not limited to, checks, wire transfers, automated clearinghouse transfers, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

7.     The Debtor is authorized to continue to use its preprinted checks, correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials and other business forms, substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtor's debtor-in-possession status; provided that the Debtor will add the "Debtor-in-Possession" designation to any new checks that they obtain or create post-petition.

8.     The banks listed on **Exhibits "A** to the Motion, and any and all other financial institutions receiving or transferring funds from or to the Debtor, are authorized and directed to cooperate with respect to the Debtor's efforts to maintain and use its cash management system and accounts.

9.      Subject to Section 553 of the Bankruptcy Code, all banks that maintain the Bank Accounts, and any and all other financial institutions receiving or transferring funds from or to the Debtor, are prohibited from offsetting, affecting, freezing or otherwise impeding the Debtor's use of any funds in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtor that arose before the Petition Date, absent further order of this Court.

10.      For purposes of this Order, the Debtor is authorized to deposit funds in accordance with its established deposit practices in effect as of the commencement of this case and, to the extent that such deposit practice are not consistent with the requirements of section 345(b) of the Bankruptcy Code or the Guidelines for chapter 11 cases, such requirements are waived on a final basis.

11.      The Court retains jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Order.

DONE AND ORDERED on _____.


_____
KAREN K. SPECIE
U.S. Bankruptcy Judge

Order prepared by:
Brian G. Rich, Esq.
Berger Singerman LLP
Counsel for Debtor
313 North Monroe Street, Suite 301
Tallahassee, FL 32301
Tel. (850) 561-3010
Fax (850) 561-3013
E-mail:  brich@bergersingerman.com

Service: Attorney Brian G. Rich is directed to serve a copy of this order on interested parties and file a certificate of service within 3 business days of entry of the order.

7647222-1