UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

CAMPBELLTON-GRACEVILLE      CASE NO.: 17-40185-KKS
HOSPITAL CORPORATION,      CHAPTER: 11

   Debtor.
_____/

### MEMORANDUM OPINION IN SUPPORT OF ORDERS (1) OVERRULING OBJECTIONS OF EMPOWER SYSTEMS H.I.S., LLC TO THE AMENDED JOINT DISCLOSURE STATEMENT AND TO THE SECOND AMENDED JOINT CHAPTER 11 PLAN, AND (2) DENYING EMPOWER SYSTEMS H.I.S.' RENEWED *MOTION TO DISMISS* (DOCS. 831 and 832).

This case is before the Court upon *Empower H.I.S.' ("Empower") Objection to Second Amended Joint Disclosure Statement in Connection with Chapter 11 Plan of Liquidation of Campbellton-Graceville Hospital Corporation, filed by the Debtor and the Official Committee of Unsecure Creditors (Doc. 811) and Second Amended Joint Chapter 11 Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, filed by the Debtor and the Official Committee of Unsecured Creditors (Doc. 812)* (the "Objections," Doc. 831), *Motion to Dismiss* (the "renewed Motion to Dismiss," Doc. 832), and *Joint Initial Response to Empower H.I.S.'S Objection to Plan and Disclosure Statement and Motion to Dismiss, and*

MS

Case 17-40185-KKS    Doc 842    Filed 10/24/18    Page 2 of 14

*Request for Sanctions* (the "Response," Doc. 833). Because this Court is well familiar with the history of this case and the matters in which Empower has previously been active, it is unnecessary to conduct a hearing on the Objections or the renewed Motion to Dismiss.

## BACKGROUND

The Debtor had been experiencing financial distress for several years before filing its Chapter 11 petition.[1] When it commenced this case, the Debtor owned and operated a twenty-five (25) bed critical access hospital serving north Florida and parts of Georgia and Alabama; it had approximately one hundred (100) employees. In an effort to save the hospital, in May of 2015 the Debtor entered into a "Consulting Agreement" with People's Choice Hospital ("PCH") that would provide healthcare management and other services. PCH hired Jorge A. Perez ("Perez") as CEO of the hospital. The business relationship between Debtor and PCH subsequently deteriorated. In June of 2016 the Debtor sued PCH and obtained an *ex parte* order prohibiting PCH from having access to the Debtor's bank accounts and essentially banning PCH from

---

[1] For ease of drafting, the summary of the Debtor's background and history in this section of this Order are taken from the Second Amended Joint Disclosure Statement (Doc. 811). Nothing set forth in this section of the instant Order is meant or should be construed as a finding of fact for purposes of this or any other case or proceeding.

the hospital. PCH filed multiple counterclaims against the Debtor. At the heart of the controversy between the Debtor and PCH is the "Reference Lab Program" which, according to the Debtor, PCH implemented in October 2015. The Reference Lab Program resulted in the Debtor being the target of multiple lawsuits seeking damages in excess of $6 million dollars and an investigation by the Office of the Inspector General, among others, into alleged fraudulent and illegal billing practices at the hospital.

The billings for the Reference Lab Program were run through one or more software systems allegedly implemented, utilized and owned by Empower. Once the Debtor and PCH parted ways, PCH terminated the Debtor's access to the Empower owned software. This, according to the Debtor and the Official Committee of Unsecured Creditors ("Committee"), ultimately led to the Debtor's inability to comply with statutory reporting obligations, which in turn caused Debtor's Medicare and Medicaid reimbursements to dry up in February of 2017. Without these reimbursements and the ability to receive more, the Debtor's cash flow virtually stopped, which led to its filing of this Chapter 11 petition.

3

The Debtor believed that a "substantial fraud" had occurred through the Reference Lab Program. PCH denied all allegations of wrongdoing and asserted that any fraudulent activity was engaged in by Perez, Empower and possibly other entities related to Perez. Post-petition, the Debtor and the Committee attempted to gain access to the Empower software, obtain discovery related to the Empower software and obtain knowledge about that software from Empower and Perez.[2] Debtor and the Committee list potential claims against Empower and Perez as assets that are subject to recovery under the Plan.[3]

During this case, Empower and Perez have moved to disqualify Committee counsel, objected to various plans and disclosure statements, scheduled, participated in and resisted discovery, attended virtually every hearing, and joined other parties' motions.[4] During this case Empower has not filed or articulated a claim against the Debtor.[5]

---

[2] *See* Docs. 140, 187, 201, 217, 220, 429 and 571.
[3] *See infra.; See* Doc. 811-2.
[4] These documents represent a non-exhaustive list of filings, objections and appearances by counsel for Empower Systems, H.I.S. LLC and, in some instances, Perez. *See* Docs. 359, 400, 417, 435,448, 464, 477, 481, 489, 535, 699-702, 740, 778, 780 ,831 and 832.
[5] Empower at one point asserted that it was a creditor because the Debtor had listed it on Schedule E/F as having a disputed claim (Doc. 133, p. 27). The Court disabused Empower of this theory when it held that Empower had no standing to seek to disqualify Committee counsel (Doc. 539).

## PROCEDURAL HISTORY

This case involves complex issues of law and fact. The active participants have included entities, individuals and attorneys from various parts of Florida and the United States. Since July, the Court has held several continued status hearings, the most recent of which occurred on October 4, 2018. These hearings were scheduled to facilitate continued negotiation and mediation between the Debtor, the Committee and myriad other entities and parties, with the ultimate goal of confirming a consensual plan.

At the conclusion of the October 4 status hearing, the Court agreed to enter an Order rescheduling the hearing for final approval of the disclosure statement and confirmation of the joint plan, and setting other deadlines; that Order was docketed on October 15, 2018.[6] Debtor and the Committee filed their *Second Amended Joint Disclosure Statement* and *Second Amended Joint Chapter 11 Plan of Liquidation* on October 12, 2018.[7] The Debtor has also filed motions to approve compromises and settlements that form the foundation for the amended joint plan.[8] These

---

[6] Doc. 815. Empower's counsel attended the October 4, 2018 status hearing. Doc. 798.
[7] Docs. 811 and 812.
[8] Docs. 806 and 810.

compromises and settlements are a direct result of the strenuous negotiation and mediation that had been ongoing during this case.

The final hearing on approval of the settlements, as well as approval of the joint disclosure statement and confirmation of the joint plan of reorganization is scheduled to begin on October 30, 2018.[9]

On October 19, 2018, Empower filed the Objections and renewed Motion to Dismiss currently before the Court. Debtor and the Committee oppose the Objections and renewed Motion to Dismiss on the basis that Empower has no standing to seek such relief in this case. For the reasons set forth below, I concur that Empower does not have standing or the right to appear and be heard on its Objections or renewed Motion to Dismiss and will enter separate orders accordingly.

## DISCUSSION

In the Eleventh Circuit, "[s]tanding… presents a threshold jurisdictional question of whether a court may consider the merits of a dispute."[10] Citing Supreme Court precedent, the Eleventh Circuit has recognized that "the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular

---

[9] Doc. 822.
[10] *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).

6

issue and not whether the issue itself is justiciable."[11] Standing, and the right to be heard on a particular matter, in Chapter 11 cases is critical because of the myriad creditors, parties in interest and others who may be affected by or interested in the outcome of the reorganization and other proceedings.  As the Seventh Circuit Court of Appeals stated many years ago, "[t]he limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases."[12]

The right to appear and be heard as a party in interest under 11 U.S.C.§ 1109(b) is not the same as standing.  Similarly, 11 U.S.C.§ 1109 does not give every party in interest the right to seek relief on every issue.[13]  As to confirmation, "Congress did not intend to grant all parties in interest standing to be heard ... on every single aspect of the reorganization proposal and the effects of its consummation."[14] To establish standing to object to confirmation, a party in interest under 11

---

[11] *In re J.H. Inv. Servs.*, 413 F. App'x 142, 148 (11th Cir. 2011) quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947 (1968).
[12] *Matter of Deist Forest Prods., Inc.*, 850 F.2d 340, 341-42 (7th Cir. 1988) citing *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641–46 (2d Cir.1988).
[13] *Matter of Rimsat, Ltd.,* 193 B.R. 499, 503 (Bankr. N.D. Ind. 1996), citing *In re Southwest Equipment Rental*, 152 Bankr. 207, 209 (Bankr. E.D. Tenn. 1992).
[14] *In re A.P.I., Inc.,* 331 B.R. 828, 860 (Bankr. D. Minn. 2005), *aff'd, sub nom. OneBeacon Am. Ins. Co. v. A.P.I., Inc.*, CIV. 06-167 (JNE), 2006 WL 1473004 (D. Minn. May 25, 2006).

7

U.S.C.§ 1109(b) must possess a legally protected interest affected by confirmation.[15]

In ruling on whether an appellant in a bankruptcy case had standing, the District Court in *In re Ocean Rig UDW Inc., et. al.*, reiterated the two-pronged standard: the appellant in a bankruptcy case (1) must be an "aggrieved person" whose pecuniary interests are directly affected by the order at issue; and (2) must have "prudential standing," in that he or she is asserting his or her "own legal rights and interests and not those of third parties."[16] In discussing the latter prong, the District Court observed that "[p]rudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan."[17] This two prong test applies in bankruptcy cases as well as bankruptcy appeals.

In *In re E.S. Bankest, L.C.*, a case with facts and legal issues very similar to those in the instant case, Chief Bankruptcy Judge Emeritus A.

---

[15] *See In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. 2007), aff'd, 00-02142(PJW), 2008 WL 4890896 (D. Del. Nov. 12, 2008).
[16] *In re Ocean Rig UDW Inc.,* 585 B.R. 31, 37 (S.D.N.Y. 2018), *appeal filed,* 18-1374, (2d Cir. May 4, 2018) citing *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997) ("[t]o have standing to appeal a bankruptcy court order, an appellant must be an 'aggrieved person.'"); *In re Quigley Co.*, 391 B.R. 695, 705 (Bankr. S.D.N.Y. 2008) ("[i]n addition to satisfying the aggrieved person standard, an appellant must also have prudential standing. This requires that the appellant assert the appellant's own legal rights and interests and not those of third parties.")
[17] *In re Ocean Rig UDW Inc.,* 585 B.R. at 37.

8

Jay Cristol held that a party sued by the representative of the Chapter 11 debtor's estate did not have standing to pursue a motion to convert the case to Chapter 7; in so doing, Judge Cristol thoroughly analyzed standing and party in interest status for purposes of Section 1109 of the Code.[18] *In Bankest*, the representative of the Chapter 11 debtor's estate filed an adversary proceeding against a law firm seeking $170 million in damages for breach of fiduciary duty and alleged legal malpractice. The law firm moved to convert the Chapter 11 to a Chapter 7, or alternatively appoint a Chapter 11 Trustee or examiner.[19] Before the court was the estate's representative's motion to strike the motion to convert.[20] After an exhaustive and informative discussion the bankruptcy court held that the law firm had neither standing nor party in interest status for purposes of Section 1109.[21]

Like Empower, the law firm in *Bankest* had never filed a claim and had no interest in the outcome of the Chapter 11 case. The bankruptcy court found that the law firm's motion was nothing but "a litigation tactic

---

[18] *In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005).
[19] *Id.* at 593.
[20] *Id.*
[21] *Id.* at 599-600.

9

to delay and hinder prosecution of the [case against it] with the ultimate goal to reduce the estate's recovery in connection therewith."[22]

Throughout this Chapter 11 case, Empower's goal has appeared identical to that of the law firm defendant in *Bankest*: to hinder and delay this Chapter 11 case, and to reduce or eliminate the Debtor's, Committee's or liquidating trustee's chances of a successful recovery against it.[23] That Empower's goal is to minimize or eliminate its own potential liability to the detriment of the creditors of this estate is made more apparent by its last minute filing of the Objections and renewed Motion to Dismiss. Had Empower's goal been different, presumably it would have filed (at minimum) its renewed Motion to Dismiss well in advance of the October deadline to object to confirmation. Its counsel has participated in virtually every status hearing, and other hearings, held in this case since at least May 29, 2018, rendering Empower well aware—for months—of the direction this Chapter 11 was heading.[24]

Empower's goal is directly contrary to those of the creditors of this Debtor and is not a legitimate use of party in interest status in a Chapter

---

[22] *Id.* at 596.
[23] Although he is not named as a party in the Objections or renewed Motion to Dismiss, Jorge Perez's goal has appeared identical to that of Empower.
[24] *See, e.g.,* Doc. 699, *et. seq.*

10

11 case. Empower's last minute Objections and renewed Motion to Dismiss amount to nothing more than a ruse designed to hold the Debtor, the Committee, the creditors, and all other parties in interest who have been working valiantly toward a consensual plan hostage.[25]

In March of this year this Court held that Empower did not have standing to seek to disqualify Committee counsel.[26] In that ruling, the Court focused on the fact that Empower was not a creditor, had not filed a claim, and did not have a stake in the outcome of this Chapter 11.[27] The Court emphasized that because Empower's only role in this case was as a potential target of future litigation by the Debtor, Committee, creditors and/or a liquidating trustee, it had no stake in the outcome of this Chapter 11 case:

> Empower has a potential adverse consequence of any case or proceeding that the Debtor, PCH [People's Choice Hospital] or the liquidating trustee may pursue, regardless of in what forum any such claim may be asserted, and irrespective of

---

[25] On the same day that Empower filed the Objections and renewed *Motion to Dismiss*, its counsel filed a motion to withdraw as counsel to Empower and Perez. (Doc. 829.) (currently a *Second Amended Motion to Withdraw.* (Docs. 836 and 838.) As the Debtor and Committee point out in their response to the renewed Motion to Dismiss and Objections, the timing of the motion to withdraw suggests that Empower's counsel may have been reluctant to file these pleadings, especially in light of the Court's prior ruling on standing but proceeded because of the court-ordered deadline to file objections to the disclosure statement and confirmation. *See* Doc. 833, fn. 3.
[26] Doc. 539.
[27] *Id.*

11

whether or not this Chapter 11 case proceeds, the plan is confirmed, or the case is dismissed.[28]

Nothing pertaining to Empower has changed since March. Empower has still not filed a claim.[29] Empower and its principal, Perez, remain potential targets for recovery for the Debtor's creditors.[30] Neither Empower nor its principal, Perez, have any claim(s) or rights that will be affected in this Chapter 11 case; this is true regardless of whether the plan is confirmed or the case is dismissed.[31] Whether Empower or Perez are sued does not depend on the outcome of this Chapter 11 case. On the other hand, the rights, claims and interests of the creditors and other affected parties would be negatively impacted if this Court were to consider Empower's eleventh hour renewed attempt to derail this case. The only parties that might benefit from this tactic are Empower and Perez.

---

[28] *Id.* at pp. 9-10.
[29] *See* Claims Register. The bar date for claims of non-governmental creditors was September 13, 2017. *Id.*
[30] The Amended Disclosure statement lists a potential claim against Empower Systems H.I.S., LLC in excess of $3.3 million dollars and a plethora of potential claims against Jorge Perez in unspecified amounts. *See* Doc. 811-2, pp. 3 and 6.
[31] *In re Sea Island Co.*, 10-21034, 2014 WL 3767431 at *3 (Bankr. S.D. Ga., July 30, 2014) ("Such requirements include that the party in interest must: "(1) have suffered an actual injury or show the imminence of such injury; (2) establish that the injury is fairly traceable to the conduct at issue; and (3) demonstrate that the requested relief is likely to redress the injury.")

Like the target defendant in *Bankest*, Empower does not have a pecuniary interest in this estate, a legally protectible interest in this Chapter 11 case, or a sufficient or practical stake in the outcome of this case or in the relief sought in its renewed Motion to Dismiss.[32] Empower and Perez' interests in protecting themselves from potential liability are, as Judge Cristol so aptly wrote in *Bankest*, "antithetical to the interests of the legitimate creditors of the Debtor who have a direct interest in maximizing any recovery from [them]."[33] Empower's renewed Motion to Dismiss and Objections appear to be another attempt to use the Bankruptcy Code as a shield against potential liability and to obtain a litigation or negotiation advantage.

For the reasons stated, it is

ORDERED:

1. The Court will enter separate Orders overruling the Objections and denying the renewed Motion to Dismiss filed by Empower Systems H.I.S., LLC in keeping with this Memorandum Opinion.

2. The Court reserves ruling on the Debtor's and Committee's Request for Sanctions (Doc. 833) and, if appropriate, to enter an

---

[32] *In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005).
[33] *Id.* at 598.

Order to Show Cause as to why Empower and its counsel should not be sanctioned for filing the Objections and renewed Motion to Dismiss.

3. The Clerk shall schedule a hearing on the *Second Amended Motion to Withdraw as Counsel for Jorge Perez and Empower H.I.S., LLC* (Doc. 838) no sooner than fourteen (14) days from the date that motion was filed, in compliance with N.D. Fla. LBR 2090-1 (D).

DONE and ORDERED on October 24, 2018.

KAREN K. SPECIE
Chief U. S. Bankruptcy Judge

cc: all parties in interest

Counsel for Debtor or the Committee is directed to serve a copy of this Memorandum Opinion on interested parties and file proof of service within 3 days.